**SO ORDERED.**

**SIGNED this 24 day of March, 2016.**

_____
**David M. Warren
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 14-05006-5-DMW |
| CYNTHIA DIANE KELLY | CHAPTER 7 |
| DEBTOR | |

| | |
|---|---|
| CYNTHIA DIANE KELLY, | |
| PLAINTIFF | |
| vs. | ADVERSARY PROCEEDING NO. 15-00064-5-DMW |
| U.S. DEPARTMENT OF EDUCATION, | |
| DEFENDANT | |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter comes before the court upon the Motion for Summary Judgment ("Summary Judgment Motion") filed by the United States of America, on behalf of its agency, the U.S. Department of Education ("Defendant") on December 11, 2015 and the Response filed by Cynthia Diane Kelly ("Plaintiff") on January 4, 2016. The court conducted a hearing on February 2, 2016

in Raleigh, North Carolina. Kimberly A. Moore, Esq. appeared for the Defendant, and the Plaintiff appeared *pro se*. Based upon the pleadings, memoranda, discovery evidence, and arguments of the parties, the court makes the following findings of fact and conclusions of law:

## JURISDICTION

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. *See Ward v. U.S. Dep't. of Educ. (In re Ward)*, 2013 WL 4136093 at *1 (Bankr. E.D.N.C. Aug. 9, 2013) (noting action to determine dischargeability of student loans is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I)).

2. The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

## PROCEDURAL BACKGROUND

3. The Plaintiff filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code ("Code") on August 29, 2014.

4. In her Schedule E of Creditors Holding Unsecured Priority Claims filed on September 11, 2014, the Plaintiff scheduled "Great Lake" as a creditor for three student loan debts ("Student Loans") in amounts of $14,996.54, $35,560.00, and $120,326.80.

5. On October 17, 2014, the Defendant filed three proofs of claims in the respective amounts of $15,106.79, $35,692.22, and $119,557.08 due under the Student Loans obtained by the Plaintiff from the Defendant. The Student Loans were serviced by Great Lakes Educational Loan Service ("Great Lakes").

6. Upon request of the Plaintiff, the case was converted to Chapter 7 on December 30, 2014.

7. On May 26, 2015, the Plaintiff initiated this adversary proceeding by filing a Complaint to Determine Dischargeability of Student Loan ("Complaint") against Great Lakes. In the Complaint, the Plaintiff sought a determination that the Student Loans create a hardship to the Plaintiff and are, therefore, dischargeable.

8. On June 23, 2015, the Defendant filed a Notice that the Defendant, rather than Great Lakes, was the proper party to be named and served in this adversary proceeding. On July 28, 2015, the Plaintiff filed an amended Complaint to Determine Dischargeability of Student Loan ("Amended Complaint") against the Defendant. The Amended Complaint seeks the same determination that the Student Loans are dischargeable.

9. On August 20, 2015, the Defendant filed an Answer, in which the Defendant denies that the Plaintiff is entitled to the relief sought in the Amended Complaint.

10. After completion of discovery, the Defendant filed its Summary Judgment Motion which is now before the court.

FACTUAL BACKGROUND

11. The Plaintiff is sixty years old, is unmarried, and has one adult, non-dependent child. She does not have a permanent place of residence and lives with various friends.

12. Between 1974 and 2012, the Plaintiff obtained the Student Loans to finance her extensive education. The Plaintiff attended numerous post-secondary institutions, including Stone School, University of New Haven, Southern New Hampshire University, Spelman College, Drew University, South New Hampshire University, University of Mount Olive, and Shaw University. The Plaintiff has a doctorate degree from Drew University.

13. From July 1997 until March 31, 2004, a time period that included the "2001 Recession," the Plaintiff was employed in a secretarial position with GlaxoSmithKline ("GSK"), one of the leading pharmaceutical companies in the world. The Plaintiff voluntarily left this apparently very secure job to pursue volunteer and self-employment opportunities and full-time mission ministry. At the time the Plaintiff left her employment with GSK, she was earning an annual salary of approximately $30,000.00.

14. The Plaintiff reports the following employment history since leaving GSK:

    a. 2005-2011: Adjunct Professor, Mount Olive University, earning $1,350.00 per class taught;[1]

    b. 2006: One-week temporary assignment obtained through Kelly Services ("Kelly") as an administrative assistant for GSK;[2]

    c. 2013: Six-week temporary assignment obtained through Kelly grading exams for Measured Progress;[3]

    d. 2013: Monologue at AME Church Dorcas Extravaganza, earning $25.00;

    e. 2013: Monologue at Zion Campbell AME Church, earning $100.00;

    f. 2014: Preacher at House of Refuge Church Ministries, earning $150.00;

    g. 2014: Playwright for House of Refuge Church Ministries, earning $150.00; and

    h. 2014: Preacher at Holistic Church Ministries, earning $98.00.

---

[1] The Debtor failed to provide the total number of classes taught or a total gross amount of compensation.
[2] The Debtor failed to provide the gross amount of compensation.
[3] The Debtor failed to provide the gross amount of compensation.

4

15. In a Chapter 7 Statement of Current Monthly Income and Means-Test Calculation ("Statement") dated February 9, 2015,[4] the Plaintiff disclosed that she currently receives $194.00 per month from Wake County Department of Social Services ("Wake County DSS") for "Food and Nutrition Services."[5] In addition, the Plaintiff reported that she receives up to $400.00 each month from various bake and yard sales.

16. In the Statement, the Plaintiff claimed monthly expenses in the amount of $3,484.41; however, other than $533.41 per month in auto loan payments, this claimed amount is not based on the Plaintiff's actual expenses but was computed from IRS National Standards for Food, Clothing, and Other Items.[6]

17. Based upon tax records discovered in this matter, the Plaintiff had an adjusted gross income of $26,842.00 in 2004, $2,700.00 in 2006, $273.00 in 2007, $3,939.00 in 2008, $1,424.38 in 2013, and $0.00 in 2014. The records provide no other tax information.

18. On February 10, 2010, the Plaintiff received a consolidation loan in the amount of $71,380.28 to refinance her prior student loans. From 2009 to 2012, the Plaintiff obtained twelve additional student loans to attend Mount Olive College.

19. On April 21, 2013 and again on February 23, 2014, the Plaintiff was approved to participate in Income-Contingent Repayment Plans which reduced her monthly payments on applicable Student Loans to $0.00 for a period of one year from the times of approval.

---

[4] The Statement was not filed with the court and may have been provided by the Plaintiff in the course of discovery. The Statement differs from the Chapter 7 Statement of Your Current Monthly Income filed by the Plaintiff on March 9, 2015.

[5] The amount of this income is corroborated in a Notice of Eligibility, Denial, or Pending Status issued by Wake County DSS to the Plaintiff on October 29, 2014.

[6] This information is available at www.usdoj.gov/ust/.

5

20.     The sum of only $2,294.10 has ever been paid toward the Student Loans; however, it is unclear whether the Plaintiff actually made payments. The Plaintiff indicated that any payments were from income tax refund funds.[7]

21.     The Plaintiff is the founder and executive director of BootStraps Support Ministries ("BootStraps"), a volunteer service agency designed to locate resources to assist individuals and families in need. The Plaintiff founded BootStraps in or around 1990 when she lived in Connecticut, and the Plaintiff brought this ministry with her to North Carolina. Since leaving employment with GSK, the Plaintiff has devoted significant time to BootStraps. The Plaintiff contends that her goal was to make BootStraps a functional organization capable of providing her with income but attests that she has not received any income from BootStraps in the past five years. The Plaintiff did not provide any information about income from BootStraps prior to that five-year period.

22.     The Plaintiff attached to her Response copies of newspaper and magazine articles about the Plaintiff's volunteer activities during the years 1988 through 1990 while she was living in Connecticut. In addition, the Plaintiff provided a copy of a letter dated April 12, 2012 which recommended the Plaintiff for an award in recognition of her work with BootStraps.

23.     The Plaintiff is registered with both Kelly and Monster.com ("Monster"), an online job search database. The Plaintiff disclosed the two temporary assignments received through Kelly but provided no evidence that she actively sought employment through Monster's resources during her extended periods of unemployment.

24.     The Plaintiff attached to her Response copies of numerous email communications ("Emails") dated between 2012 and 2015, whereby the Plaintiff made various inquiries about

---

[7] The court suspects that the payments may have been collected as setoffs from tax refunds rather than direct and voluntary payments by the Plaintiff.

6

possible employment positions with non-profit agencies and educational institutions. The Plaintiff did not provide any similar evidence of employment search efforts between the time she left GSK in 2004 and 2012.

25. As of December 11, 2015, the date of the Summary Judgment Motion, the total amount due under the Student Loans was $161,435.21.

## STANDARD OF REVIEW

26. Rule 56 of the Federal Rules of Civil Procedure, incorporated by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, "the court must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant . . . ." *Humboldt Express, Inc. v. Wise Co. (In re Apex Express Corp.)*, 190 F.3d 624, 633 (4th Cir. 1999) (citations omitted).

27. Summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(c) (1963) (amended 2010)).

## DISCUSSION

28. A Chapter 7 discharge does not discharge an individual debtor from a debt for an educational loan "made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution," "unless

7

excepting such debt would impose an *undue hardship* on the debtor and the debtor's dependents . . . ." 11 U.S.C. § 523(a)(8)(A)(i) (emphasis added).  Because the Code does not define "undue hardship," the United States Court of Appeals for the Fourth Circuit analyzed its meaning, noting that "'undue' generally means 'unwarranted' or 'excessive.'" *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 399 (4th Cir. 2005) (citing *The Random House Dictionary of the English Language* 2066 (2d ed. 1987)).  The Fourth Circuit thus reasoned:

> Because Congress selected the word "undue," the required hardship under § 523(a)(8) must be more than the usual hardship that accompanies bankruptcy. Inability to pay one's debts by itself cannot be sufficient; otherwise all bankruptcy litigants would have undue hardship. The exception would swallow the rule, and Congress's restriction would be meaningless.  As a result, "[t]he existence of the adjective 'undue' indicates that Congress viewed garden-variety hardship as insufficient excuse for a discharge of student loans." . . . This heightened standard protects the integrity of the student-loan program and saves it "from fiscal doom." It also ensures public support for the program by preventing debtors from easily discharging their debts at the expense of taxpayers who made possible their educations.

*Id.* at 399-400 (quoting *Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1087 (9th Cir. 2001) (other citations omitted)).

29.     In *Frushour*, the Fourth Circuit adopted the United States Court of Appeals for the Second Circuit's widely followed, three-part *Brunner* test for consideration of "undue hardship" in Chapter 7 proceedings. *Id.* at 400 (citing *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987)).  In *Brunner*, the Second Circuit held that in order to establish an undue hardship, a debtor must show:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396. In *Ward*, this court determined that it "is bound by the precedent of the Fourth Circuit Court of Appeals and must apply the *Brunner* test." *Ward*, 2013 WL 4136093 at *4 (rejecting argument that the court need not follow *Brunner*).

30. Under the *Brunner* test, a debtor bears the burden of proof and must satisfy all three prongs in order for student loans to be dischargeable. *Vujovic v. Direct Loans (In re Vujovic)*, 388 B.R. 684, 688 (Bankr. E.D.N.C. 2008). "Moreover, this test must be strictly construed: equitable concerns or other extraneous factors not contemplated by the test may not be imported into the analysis of 'undue hardship.'" *Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 328 (3rd Cir. 2001) (citing *Pa. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 306 (3rd Cir. 1995)). *See also Murphy v. Sallie Mae (In re Murphy)*, 305 B.R. 780, 801 (Bankr. E.D. Va. 2004) (holding that "discharge of a student loan must be founded on more than notions of sympathy and fairness").

31. When considering the first prong of the *Brunner* test, a court must look at a debtor's *current* income and expenses, and "examine the debtor's standard of living, 'with a view toward ascertaining whether the debtor has attempted to minimize the expenses of himself and his dependents.'" *U.S. Dept. of Health & Human Servs. v. Smitley*, 347 F.3d 109, 117 (4th Cir. 2003) (quoting *Rice v. United States (In re Rice)*, 78 F.3d 1144, 1149 (6th Cir. 1996)). The Plaintiff currently collects $194.00 per month from Wake County DSS for Food and Nutrition Services. This amount appears to be the Debtor's only regular income, although she attests that she earns up to an additional $400.00 each month as a result of yard and bake sales. Even though the Plaintiff has not provided an accounting of her actual expenses beyond a car loan payment, the court is satisfied that the Plaintiff is not living frivolously and cannot both realistically maintain a minimal

9

standard of living and pay the Student Loans based upon her current income. Accordingly, the Plaintiff has met her burden of proof with respect to the first part of the *Brunner* test.

   32. The second *Brunner* factor is "prospective in nature and looks for exceptional circumstances beyond the debtor's current situation." *Frushour*, 433 F.3d at 401. The Fourth Circuit elaborated:

> [W]hether "additional circumstances" exist to indicate that the debtor's situation is likely to persist for a significant portion of the loan repayment period, "is the heart of the *Brunner* test." This factor "most clearly reflects the congressional imperative that the debtor's hardship must be more than the normal hardship that accompanies any bankruptcy." We have characterized this as "a demanding requirement" necessitating "a certainty of hopelessness" which confirms the debtor will not be able to repay the loans.

*Spence v. Educ. Credit Mgmt. Corp. (In re Spence)*, 541 F.3d 538, 544 (4th Cir. 2008) (quoting *Frushour*, 433 F.3d at 401 (internal marks omitted)). "[I]llness, disability, a lack of useable job skills, or the existence of a large number of dependents" as rare circumstances that might satisfy the second part of the *Brunner* test. *Frushour*, 433 F.3d at 401 (quoting *Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 386 (6th Cir. 2005)).

   33. In *Spence*, the Fourth Circuit was presented with a debtor having similar circumstances to the Plaintiff. Ms. Spence was over sixty-five years old and incurred approximately $161,000.00 in student loan debt to pay for her education. *Spence*, 541 F.3d at 541-542. She held bachelor's and master's degrees and only needed to complete a dissertation to obtain a Ph. D. *Id.* at 542. Ms. Spence had a history of sporadic employment, including temporary clerical positions, and at the time of her Chapter 7 bankruptcy, her income was not sufficient to maintain her expenses for rent, food, delinquent taxes, medication to treat high blood pressure and diabetes, laundry, and entertainment. *Id.* The Fourth Circuit affirmed the district court's findings that "Ms. Spence articulated no 'additional circumstances' beyond her age and current financial distress that

would prevent her from repaying her loans . . ." *Id.* at 542-43.  Specifically, the Fourth Circuit opined:

> She is now in her late 60s and has a low-paying job, but she is by all accounts a reliable, diligent worker with a master's degree along with completed Ph. D. course work.  Her grades were excellent, and her education is not so outdated that higher-paying alternatives would be unreachable.  Ms. Spence suffers from diabetes and high blood pressure, but neither these ailments nor any other age-related health problems affect her ability to work full-time.  She has had difficulty obtaining a higher paying position, but she has not actively sought other employment or even updated her resume since obtaining the full-time job at E*trade.  We have said that "[h]aving a low-paying job . . . does not in itself prove undue hardship, especially where the debtor is satisfied with the job, has not actively sought higher-paying employment, and has earned a larger income in previous jobs."  We are not unsympathetic to the disadvantage of her current circumstances, but the facts point to no "additional circumstances," outside the normal hardships faced by bankruptcy petitioners, that would render her situation hopeless.

*Id.* at 544 (quoting *Frushour*, 433 F.3d at 401).

34. Similar to Ms. Spence, the Plaintiff is in her sixties, is well-educated, and is in generally good health.  When the Plaintiff argued this matter *pro se*, the court found her to be knowledgeable, articulate, and professional in appearance and demeanor, and the court believes that she is capable of obtaining employment that will enable her to repay the Student Loans.  The court rejects the Plaintiff's argument that her inability to secure meaningful employment since voluntarily leaving GSK is indicative that she will be unable to do so in the future.  While acknowledging that the Plaintiff has made some recent efforts toward finding employment, the court finds these efforts to be very selective and, aside of the registration with Kelly and Monster, limited to casual inquiries about possible non-profit agency or adjunct teaching positions.  The Plaintiff provided the court with no evidence that she has at any time "pounded the pavement" to find a job by traditional methods such as regularly reviewing posted job openings and making formal applications for those for which she is certainly qualified.  Accordingly, the court holds that the Plaintiff has failed to establish any "additional circumstances" sufficient to sustain her

11

burden of proof as to the second *Brunner* factor. *See Greene v. U.S. Dept. of Educ. (In re Greene)*, 484 B.R. 98, 128-29 (Bankr. E.D. Va. 2012) (holding that a debtor's persistent low income was not a sufficient "additional circumstance," where the debtor's evidence of attempts to obtain gainful employment was "somewhat vague" and her "explanations as to why her attempts to gain employment were unsuccessful [were] largely based on speculation and conjecture").

35. The Plaintiff's failure to satisfy the second part of the *Brunner* test renders the Student Loans nondischargeable, and the court need not decide whether the Plaintiff satisfies the third *Brunner* prong. The court nonetheless examined this issue and is troubled that the Plaintiff amassed over $160,000.00 in debt under the Student Loans over a period of almost forty years, yet only $2,294.10 has ever been paid toward this indebtedness. As more fully explained below, the Plaintiff's activity during this time period, especially since she left employment with GSK, does not demonstrate a good faith effort to repay the Student Loans; therefore, the court holds that the Plaintiff also fails to satisfy the third part of the *Brunner* test.

36. "Good faith consists of the debtor's 'efforts to *obtain employment*, *maximize income,* and *minimize expenses*.'" *Educ. Credit Mgmt. Corp. v. Mosko (In re Mosko)*, 515 F.3d 319, 324 (4th Cir. 2008) (quoting *O'Hearn v. Educ. Credit Mgmt. Corp. (In re O'Hearn)*, 339 F.3d 559, 564 (7th Cir. 2003) (internal quotation marks omitted) (emphasis added)). In 2004, the Plaintiff voluntarily left a job with a steady salary to pursue what she calls a "voluntary lifestyle." The Plaintiff has only had a sprinkling of paying jobs over the past decade and has not demonstrated any significant efforts to obtain gainful employment and maximize her income during this time period. Other than a securing a one-week temporary assignment and teaching an unknown number of adjunct classes at Mount Olive University, the Plaintiff did not have any paid employment during the years 2005 through 2011, and the Plaintiff provided no evidence that she

actively looked for a job during that time period. The Emails demonstrate that starting in 2012, the Plaintiff did make some effort to find employment, but as previously stated, these efforts were selective and limited and do not demonstrate a good faith effort to obtain employment and maximize income.

37.    To satisfy the third *Brunner* prong, "a debtor may not 'willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control.'" *Id.* In *Mosko*, the female debtor did not work during the summer months so that she could spend time with her son and care for her mother. The Fourth Circuit found that "[w]hile this desire may be understandable, it is not an undue hardship for her to endure the sacrifice most parents experience in working a full calendar year." *Id.* at 325. Similarly, the Plaintiff's volunteer work with BootStraps and other ministries, while commendable, does not excuse her from seeking employment and income sufficient to make payments toward the Student Loans. Almost every day, this court sees honest debtors who are committed and determined to repay their creditors and make significant sacrifices to accomplish that admirable goal. The Plaintiff's lack of desire and motivation is an insult to those similarly situated, especially to those lacking the gift of an education. The insult is further compounded by the Plaintiff's complacent acceptance of welfare from the Wake County DSS when others have no choice but to depend upon that public assistance.

## CONCLUSION

38.    Based upon the undisputed facts presented in this case, viewed in the light most favorable to the Plaintiff, the court finds that the Plaintiff failed to satisfy the second and the third prongs of the *Brunner* test. The Student Loans are nondischargeable pursuant to 11 U.S.C. § 523(a)(8), because all three *Brunner* prongs must be met for student loans to be considered an "undue hardship;" now therefore,

IT IS ORDERED, ADJUDGED, AND DECREED as follows:

1. The Defendant's Summary Judgment Motion be, and hereby is, granted; and

2. The Student Loans be, and hereby are, determined to be excepted from the Plaintiff's discharge, pursuant to 11 U.S.C. § 523(a)(8).

**END OF DOCUMENT**